IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

M.P., by and through her parents, A.P. and J.R.,

    Plaintiff,

v.

LAKE FOREST ELEMENTARY
CHARTER SCHOOL CORPORATION,

    Defendant.

Case No. 25-2423
Jury Demanded

## COMPLAINT

Plaintiff, by and through undersigned counsel, alleges as follows:

### JURISDICTION AND VENUE

1. This is a civil action to redress disability-based discrimination under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*, and the Louisiana Human Rights Act, La. Rev. Stat. § 51:2247.

2. Plaintiff also asserts tort claims under state law.

3. This Court has jurisdiction under 42 U.S.C. §§ 12132; and 28 U.S.C. § 1367(a).

4. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

### PARTIES

5. Plaintiff is M.P.

6. M.P.'s mother is J.R.

7. M.P.'s father is A.P.

8. Because M.P. is a minor, J.R. and A.P. are pursuing this action on M.P.'s behalf.

9. M.P. is autistic and has developmental delays.

10. Defendant Lake Forest Elementary Charter School Corporation is a public "charter" school which educates students between kindergarten through eighth grades. Its principal place of business is 11110 Lake Forest Blvd. New Orleans, LA 70128.

## FACTUAL ALLEGATIONS

11. M.P. is a 5-year-old girl.

12. M.P. has autism, also known as Autism spectrum disorder.

13. Autism is a "disability" under federal and Louisiana antidiscrimination laws, because it is a condition that substantially limits one or more major life activities.

14. M.P. qualified for EarlySteps services in 2021, a state program that provides services for infants and toddlers who have a medical condition likely to result in a developmental delay.

15. When M.P. was three years old, her parents requested a comprehensive psychological evaluation due to concerns of Autism spectrum disorder.

16. The evaluation took place over three days in May 2023 and was conducted by Lynn W. Adams, PhD.

17. According to the Vineland Adaptive Behavior scale evaluation, M.P.'s developmental weaknesses lie in her Communication skills. Her age equivalent scores in this area fell at the zero- and one-month level, receptively and expressively.

18. Dr. Adams diagnosed M.P. with Autism spectrum disorder, with accompanying language and cognitive impairment.

19. Nearly all public-school students in New Orleans attend a "charter" school.

20. A "charter" school is a school that is owned and operated by a private company, but "chartered" by the local school board to operate a "public" school, which must abide by all laws, regulations, and other standards that govern public schools.

21. At this time, there is only one "traditional" public school directly operated by the Orleans Parish School Board: The Leah Chase School.

22. Other than students attending The Leah Chase School, every public-school student in New Orleans attends a "charter" school.

23. Lake Forest is a "Type 3" charter school, which means a "preexisting public school converted and operated as the result of and pursuant to a charter between a nonprofit corporation and the local school board." La. Rev. Stat. § 17:3973(2)(b)(3).

24. Only children who reside in Orleans Parish are eligible to attend Lake Forest. La. Rev. Stat. § 17:3973(2)(b)(iii).

25. Every public school in Louisiana, whether a "charter" school or a traditional public school, is subject to both the Individuals with Disabilities Education Act (IDEA) and the Americans with Disabilities Act (ADA).

26. The IDEA governs "local educational agencies." 20 U.S.C. §§ 1415; 1401(19).

27. The IDEA governs "charter schools" to the same extent it governs traditional public schools. 20 U.S.C. § 1401(6); 34 C.F.R. §§ 300.28(b)(2), 300.209; La. Rev. Stat. § 17:3996(C)(1).

28. With regard to receiving funds under and complying with the IDEA, charter schools generally have three choices: they can serve as their own LEA; they can be "part of an LEA" by joining with a local school board or other charter schools; or they can allow the state to operate their special-education program. 34 C.F.R. §§ 300.209, 300.223.

29. Lake Forest elected to establish itself as its own LEA.

30. Because Lake Forest "is an LEA" that "receives funding" under the IDEA, it is solely "responsible for ensuring that the requirements of [the IDEA] are met, unless State law assigns that responsibility to some other entity." 34 C.F.R. § 300.209(c).

31. Louisiana law does not "assign that responsibility" to any other entity—Lake Forest bears sole responsibility for ensuring that its IDEA obligations are met.

32. In other words, because Lake Forest elected to establish itself as a standalone LEA, it receives all the benefits—and *obligations*—that flow from that status.

33. Charter schools are also entitled to "contract with" the local school board to provide "specific services," including "special education services." La. Rev. Stat. § 17:3995(A)(4)(b).

34. Lake Forest has not elected to contract with the Orleans Parish School Board to provide special-education services, because Lake Forest does not provide special education at all.

35. By "special education," Plaintiff refers to a curriculum specially tailored to the needs of a disabled child, as opposed to the *general*-education curriculum.

36. Many children who have individualized education plans (IEPs) based on their disabilities do not receive "special education," but instead receive certain accommodations (such as extra time for testing) in the general-education curriculum.

37. In other words, while all special-education students receive accommodations, not all children who receive disability-based accommodations receive "special education."

38. While private schools are generally required only to provide disability-based accommodations to students who can succeed in their general curriculum, public schools must also provide special-education, with specially tailored curriculums carefully designed to meet the needs of the child.

39. As its own LEA, Lake Forest must provide a free appropriate public education to "all children," regardless of their ability to pass an assessment. 20 U.S.C. §§ 1400(d), 1413.

40. In January 2025, M.P.'s parents, J.R. and A.P., timely submitted an online application to enroll M.P. at Lake Forest Charter School for the 2025–26 school year.

41. Lake Forest is located near their home, which would make attendance very convenient for the family.

42. Because she meets the age and residence requirements, M.P. should be eligible to attend Lake Forest. 28 La. Admin. Code Pt CXXXIX, 2709(A) ("Each student submitting a timely application and meeting all residency requirements and admission requirements, as applicable, shall be considered eligible to enroll in a charter school.").

43. Lake Forest utilizes a two-phase admission process, Phase I being an in-person assessment to test a child's aptitude/knowledge.

44. To proceed to Phase II, kindergarten and 1st grade applicants must earn a combined score of 11 based on a school-specific matrix.

45. But for Lake Forest's unlawful pre-admissions assessment, the only impediment to M.P.'s ability to attend Lake Forest would be capacity limits (i.e., the number of seats available in the school). 28 La. Admin. Code Pt CXXXIX, 2709(B).

46. If more students apply than there are spaces in the school, then the charter school must use a lottery. 28 La. Admin. Code Pt CXXXIX, 2709(D).

47. On January 28, 2025, J.R. sent Lake Forest a copy of the psychological evaluation conducted in May 2023 by Dr. Lynn Adams, who diagnosed M.P. with autism.

48. The evaluation also reflects that M.P. has "developmental delays" in "all areas" of cognitive and behavioral functioning.

49. M.P.'s assessment was scheduled for February 3, 2025.

50. On February 4, 2025, M.P.'s parents received her scores: she earned a total matrix score of 2—far below the minimum score of 11 required to continue with the admissions process.

51. While passing the assessment does not guarantee a student admission into Lake Forest, failing the assessment guarantees rejection.

52. Because Lake Forest's use of the assessment is an "absolute barrier" to M.P.'s admission, M.P. has Article III standing to challenge it, even though removal of this barrier cannot "guarantee" that M.P. will be granted admission to Lake Forest. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 (1977).

53. Lake Forest's use of a pre-admissions "assessment" as a condition of admission violates at least two federal laws prohibiting disability discrimination.

54. Lake Forest's use of an assessment test violates Title II of the ADA because it is a "criteria or method[] of administration" that discriminates against students with intellectual disabilities. 28 C.F.R. § 35.130(3); *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 839 (5th Cir. 1999) (holding that the ADA prohibits "eligibility requirements that tend to screen out the disabled").

55. Lake Forest intentionally screens out disabled children. Regardless of Lake Forest's intent, however, the use of the assessment has a discriminatory *effect* and is thus unlawful under the ADA. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971) (explaining that "good intent or absence of discriminatory intent does not redeem [a decisionmaker's] procedures or testing mechanisms that operate as 'built-in headwinds' for" protected groups).

56. Not only are disabled students far less likely to *pass* the assessment, but their parents are far less likely to even *apply*, because the test itself dissuades the parents of disabled children from applying. *Clark v. Virginia Bd. of Bar Examiners*, 880 F. Supp. 430, 445 (E.D. Va. 1995) (a requirement that would-be lawyers disclose mental illness violated the ADA because it "deters the counseling and treatment from which such persons could benefit").

57. Lake Forest's use of the assessment also violates the IDEA, which requires that a local educational agency (LEA) ensure that "**all children** with disabilities are provided 'a free appropriate public education.'" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009).

58. Because Lake Forest established itself as an LEA, it must accept "all children."

59. While a child can be excluded from an LEA if the child does not meet the age or residency requirements, or because capacity is full, the IDEA prohibits an LEA from using an IQ or achievement assessment as a basis for admission.

60. Though nothing prohibits public schools from administering achievement tests to *existing* students in order to measure their progress, or to place certain students in an advanced track or advanced classes *within* the LEA, the IDEA does not permit an LEA to categorically weed out students *at the admissions phase*.

61. Lake Forest's use of the assessment also violates the LHRA. La. Rev. Stat. § 51:2247; *Minor Child. v. Roman Cath. Church of Archdiocese of New Orleans*, 2024-0008, 2024 WL 387328 (La. App. 4 Cir. 8/20/24).

62. M.P.'s parents have again applied for her to attend Lake Forest, this time for the 2026–27 school year.

63. Lake Forest has scheduled her in-person assessment to take place on December 16, 2025.

64. Because of her disability, M.P. is guaranteed to again fail this assessment if forced to take it a second time.

65. "Because [M.P.] seeks compensatory damages unavailable under the IDEA," she is "not required to exhaust her claims before the administrative agency." *Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 519 (5th Cir. 2024). Moreover, pursuing administrative remedies would be "futile." *Honig v. Doe*, 484 U.S. 305, 327 (1988).

## FIRST CLAIM – Disability Discrimination (ADA)

66. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

67. Defendant violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, because it is a public entity that discriminated against Plaintiff on the basis of her disability.

68. Defendant treated Plaintiff less favorably than non-disabled or differently disabled students.

69. Defendant denied Plaintiff reasonable accommodations for her disability.

70. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

71. Plaintiff suffered injuries as a result of the Defendant's acts or omissions.

## SECOND CLAIM – Disability Discrimination (La. Rev. Stat. § 51:2247)

72. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

73. Defendant violated La. Rev. Stat. § 51:2247 because it "den[ied] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, … on the grounds of … disability."

74. Defendant treated Plaintiff less favorably because of her disability.

75. Defendant denied Plaintiff a reasonable accommodation for her disability.

76. Plaintiff suffered injuries as a result of Defendant's acts or omissions.

## THIRD CLAIM – Disability Discrimination (IDEA), 20 U.S.C. § 1415

77. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

78. The Defendant is a "local educational agency" under 20 U.S.C. § 1415.

79. The Defendant violated Plaintiff's rights to a free appropriate public education under 20 U.S.C. § 1415.

80. The actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

81. The Defendant's actions caused Plaintiff damages.

### FOURTH CLAIM – Negligence

82. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

83. The Defendant had a duty to Plaintiff to conform its conduct to a specific standard of care, and its conduct fell below that standard of care.

84. The standard of care is set by statute (42 U.S.C. § 12132, La. Rev. Stat. § 51:2247, 20 U.S.C. § 1415).

85. Because the Defendant violated the statute(s), and because Plaintiff falls within the class of persons the statute(s) is designed to protect, the Defendant acted negligently.

86. The Defendant's negligence caused Plaintiff damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendant's conduct as set forth above violates 42 U.S.C. § 12132, La. Rev. Stat. § 51:2247, and 20 U.S.C. § 1415.

2. Declaring that Defendant is liable for negligence;

3. Enjoining Defendant under 42 U.S.C. § 12133 and La. Rev. Stat. § 51:2264;

4. Enjoining the use of an assessment test or any similar device in connection with Defendant's admission procedures;

5. Ordering Defendant and its officers, directors, and employees to undergo training with regard to their obligations to persons with disabilities under federal and state law;

6. Voiding any contracts or agreements that purport to require Defendant to use a pre-admissions assessment as a condition of admission;

7. Ordering that Defendant produce a comprehensive report to the Court regarding the number of students with intellectual disabilities denied admission to its school(s) over the past 10 years because of their score on a pre-admission assessment;

8. Ordering that Defendant produce a comprehensive plan to the Court to redress prior violations of antidiscrimination laws and prevent them from recurring in the future;

9. Awarding compensatory damages, expectation damages, nominal damages, and any other form of damages available to Plaintiff for injuries caused by Defendant's discriminatory and tortious conduct, pursuant to 42 U.S.C. § 12133, La. Rev. Stat. § 51:2264, and any other applicable provisions.

10. Awarding costs and attorney's fees to Plaintiff, pursuant to 42 U.S.C. § 12133, La. Rev. Stat. § 51:2264, 20 U.S.C. § 1415(i)(3)(B), and any other applicable provisions;

11. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which she is entitled.

Respectfully submitted,

December 3, 2025

/s/ *Chris Edmunds*

Chris Edmunds, Counsel for Plaintiff
LBSA: 37670
Chris Edmunds Law Office
740 Dante St. New Orleans, LA 70118
(504) 314-0034
chrisedmundslaw@gmail.com